IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| TEDDY GOODWINE, | ) | Civil Action No. 3:12-2107-DCN-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN,[1] ACTING | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB on September 3, 2004, alleging disability beginning March 4, 2006.[2] See Civil Action No. 3:08-cv-03829-JFA-JRM. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 14, 2007 before ALJ Edward T. Morriss, at which Plaintiff (represented by counsel) appeared and testified. On September 20, 2007, the ALJ issued a decision denying benefits.

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this lawsuit.

[2]Plaintiff originally alleged his disability began on March 8, 2004. He later amended this to March 4, 2006 (when he turned fifty). See Tr. 367-368.

The ALJ found that Plaintiff was not disabled because, under the Medical-Vocational Guidelines (also known as the "Grids") promulgated by the Commissioner, Plaintiff remained able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

The undersigned issued a Report and Recommendation on January 19, 2010 recommending that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and the case be remanded to the Commissioner for further administrative action. On January 28, 2010, the Honorable Joseph F. Anderson, Jr., United States District Judge, issued an order adopting the Report and Recommendation, and the case was remanded to the Commissioner.

After remand, a hearing was held on June 25, 2010, at which Plaintiff and a vocational expert ("VE") appeared and testified. Tr. 527-547. The ALJ denied Plaintiff's claims in a decision dated August 11, 2010 (Tr. 390-402), finding at step five of the sequential evaluation process[3] that Plaintiff was not disabled because work exists in the national economy which Plaintiff can perform.

Plaintiff was fifty-four years old at the time he was last insured for DIB (December 31, 2009). He has a high school diploma with past relevant work as a longshoreman. Tr. 95-96, 106-107, 110. Plaintiff alleges disability due to back problems and lumbar surgery. Tr. 105.

The ALJ found (Tr. 395-402):

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

---

[3]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 4, 2006, through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairment: status post lumbar laminectomy (20 CFR § 404.l520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[4] except limited to simple, routine, repetitive tasks. Additionally, he would require work breaks which could be accommodated on a scheduled basis totaling one hour for each eight hour day.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR  404.l565).

7.    The claimant was [fifty-four years old at the time of the ALJ's decision], which is defined as closely approaching advanced age (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English  (20 CFR 404.1564).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from the alleged amended onset date of March 4, 2006, through December 31, 2009, the date last insured (20 CFR  404.l520(g)).

---

[4]Light work involves lifting up to 20 pounds occasionally and 10 pounds frequently and sitting, standing, and/or walking for 6 hours in an 8-hour work day.

On June 5, 2012, the Appeals Council declined to assume jurisdiction, making the decision of the ALJ the final action of the Commissioner. Tr. 384-386. Plaintiff filed this action on July 27, 2012.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

Plaintiff, who reported a history of lower back problems dating back to 1987, sustained a severe back injury in a motor vehicle accident on May 27, 2003, when he was rear-ended by another vehicle while stopped at a traffic light. See Tr. 159, 328-340, 368. His primary care physician, Thomas R. Bolt, M.D., attempted conservative treatment (rest, analgesics, and anti-inflammatory medications) and later referred Plaintiff to a neurosurgeon, Dr. Joseph M. Marzluff. Tr. 232. A July 30, 2003 MRI of Plaintiff's lumbar spine revealed degenerative changes with disc bulges from L3 to S1, an annular disc tear at L5-S1, and foraminal stenosis. Tr. 253-254. Dr. Marzluff treated Plaintiff with conservative care including injections. Plaintiff's condition improved and he was able to return to work by the end of the year. Tr. 241-243.

4

In March 2004, Plaintiff reported a sudden onset of pain which was reported to be worse than when he was initially injured. Tr. 241. An MRI performed on March 19, 2004, showed a worsening of Plaintiff's spinal condition with a large disc herniation at L4-5 that correlated with significant neurological deficits and significant changes in symptoms including left leg motor loss. Tr. 240, 248-249. On April 16, 2004, Dr. Marzluff performed a laminectomy and discectomy to correct a left L4-5 disc herniation with compression of the left L5 nerve root. Tr. 251-252.

Following surgery, Plaintiff saw significant improvement in his back and leg pain as well as improvement in the strength of his left foot. Plaintiff indicated to Dr. Marzluff that he did not want to return to work as a longshoreman. Tr. 240. From approximately May to July 2004, Plaintiff participated in physical therapy. Tr. 288-318.

Plaintiff applied for disability retirement with the International Longshoreman's Association ("ILA") Pension Fund. On July 19, 2004, Dr. Marzluff completed a return to work form indicating that Plaintiff was "not disabled" and could return to "light duty with no excessive bending, no lifting more than 25 pounds." Tr. 358. The ILA, in a letter dated July 30, 2004 replied:

> Due to the nature of our industry, it is virtually impossible for an individual to work with restrictions such as weight limitations, lifting, bending, etc. There is no light-duty or sedentary work within our industry.

Tr. 357. Plaintiff returned to Dr. Marzluff in August 2004 with complaints of increasing left leg pain. A new MRI of Plaintiff's lumbar spine was taken on August 13, 2004. Tr. 239, 246-247. Dr. Marzluff completed a Disability Medical Evaluation Form (provided by the ILA Pension Fund), in which he expressed the opinion that Plaintiff was not disabled and could perform "light duty. Tr. 171.

Dr. Steven Poletti, a spinal surgeon, performed an independent examination on October 13, 2004. He opined (Tr. 170):

5

I don't think this man is totally disabled. He should be restricted from doing heavy repetitive lifting. Constant bending, twisting, pushing, pulling, or lifting greater than 35-40 pounds is contraindicated on a future basis. Physical therapy could be of some benefit to him in the future.

On December 22, 2004, Plaintiff's primary care physician, Dr. Bolt, also completed an ILA Disability Medical Evaluation Form. He opined that Plaintiff was "totally and permanently disabled." Dr. Bolt noted that Plaintiff's condition had not improved since March 2004, and Plaintiff experienced radicular symptoms of numbness in his toes and had severe hip pain. Tr. 172. Plaintiff's claim for ILA disability was approved shortly thereafter on January 14, 2005. Tr. 173.

In November 2005, Plaintiff reported an increase in overall back and hip pain and asked Dr. Marzluff to provide documentation for renewal of his ILA disability. Tr. 166. Dr. Marzluff agreed to do so after he reviewed a current MRI of Plaintiff's lumbar spine. Plaintiff underwent an MRI of his lumbar spine on December 1, 2005. Tr. 167-168. On January 9, 2006, Dr. Marzluff indicated that the MRI showed only postoperative changes and no evidence of recurrent disc herniation, opined that there was nothing further that he could do for Plaintiff from a surgical point of view, and referred him to another physician for pain management. Tr. 166. In a letter dated January 9, 2006 (Tr. 169), Dr. Marzluff wrote:

Mr. Goodwine has had a full neurological workup. His MRI shows status post left hemilaminectomy at L4-5. There is some enhancing scar in the left lateral recess as seen previously. Negative for recurrent/residual disc protrusion. There are mild degenerative disc changes at L3-4 and L4-5 levels. Changes include annular fissures with the largest centrally at the L3-4 level. He is not a surgical candidate at this time. I would recommend Mr. Goodwine to attend a pain management program. He has been disabled since May of 2003. It would be in Mr. Goodwine's best interest to attend a pain management program close to his home, so he may obtain the best possible result. If you have any questions, please free to contact our office.

In February 2006, Charles Fitts, M.D., a state agency consulting physician, reviewed Plaintiff's file and completed a physical residual functional capacity ("RFC") assessment. He

concluded that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, and sit and stand/walk about six hours each in an eight-hour workday. Tr. 180-187.

Plaintiff began treatment in April 2006 with pain management specialist J. Edward Nolan, M.D. of Trident Pain Center, PA. Tr. 162-163. Between April and October 2006, Plaintiff rated his pain as a five or six out of ten, on a scale of one to ten, with ten being the worst pain possible. Physical examinations consistently showed reduced or absent deep tendon reflexes in Plaintiff's legs, decreased left lower extremity motor strength (4/5), numbness and altered sensation in his left lumbar dermatomes, and pain. Plaintiff, however, retained normal gait, normal coordination, normal muscle tone in his extremities, and intact cranial nerves. It was noted that Plaintiff's symptoms of low back and hip pain were increased with walking and decreased with sitting. Dr. Nolan diagnosed radiculitis/neuritis in Plaintiff's thoracic and lumbar spine, sciatica, and sacroiliac joint pain. He administered conservative treatment including pain medication, injections, and percutaneous lysis of adhesions in May 2006. Tr. 146-149, 155, 159-163.

Plaintiff reported temporary pain relief from the steroid injection in May 2006 and Dr. Nolan administered another steroid injection in June 2006. Tr. 159. In February 2007, Plaintiff reported that he had "almost complete relief with [his] last injection" but "the pain started to return in the last few months." Dr. Nolan administered another injection. Tr. 146-148. Despite these treatments, however, Plaintiff asserted that he was not able to obtain long-lasting relief. Tr. 159-163.

In March 2007 (shortly before the first ALJ hearing), Dr. Nolan completed a Treating Physician's Statement form with an RFC assessment (on a form provided by Plaintiff's attorney). Dr. Nolan indicated that Plaintiff was limited to work at the sedentary exertional level; he should never bend at the waist; and pain (or other discomfort), sleepiness, and side effects of prescription

7

medication would cause a significant limitation in Plaintiff's concentration or attention to work tasks of fifty percent or more of a workday or work week. Tr. 141-143. He also opined that Plaintiff could not return to work as a longshoreman, Plaintiff's maximum ability to sustain work activity at any exertional level was "part-time," and no significant improvement was expected. Tr. 140-143.

Also in March 2007, Plaintiff underwent a psychological evaluation with L. Randolph Waid, Ph.D. After administering IQ and achievement tests, Dr. Waid concluded that Plaintiff was "functioning at the borderline range of intellectual abilities." Tr. 150-152.

After the case was remanded to the Commissioner, Plaintiff submitted additional medical records. In June 2007, Dr. Nolan wrote that Plaintiff had "almost complete (>95 [percent]) pain relief" from his last epidural steroid injection, the relief lasted three months, and the pain slowly returned. Examination revealed that Plaintiff had positive straight leg raise testing on the left, absent patellar (knee) reflexes, moderate pain and radiculitis of the low back. Plaintiff retained a normal gait, intact strength and sensation in his lower extremities, normal coordination, and normal muscle tone. Another epidural injection was administered. Tr. 519-521.

In October 2007, Dr. Nolan noted that the June injection provided more than 95 percent pain relief, Plaintiff's leg pain was still benefitting from the injection, and Plaintiff's back pain had returned. It was noted that Plaintiff had a normal gait, intact deep tendon reflexes, 4/5 muscle strength in his left lower extremity, normal coordination, normal muscle tone, and negative straight leg raise testing. Another epidural injection was administered. Tr. 516-518.

Dr. Nolan, in February 2008, noted that Plaintiff had moderate (more than 50 percent) relief from his previous injection, and the relief lasted until "three months ago." Tr. 512. Examinations in February revealed that Plaintiff had moderate pain and radiculitis and mildly limited range of motion,

8

but he was in no apparent distress, he retained a normal gait and coordination, he had 4/5 strength in his left lower extremity, and he had negative straight leg raise testing on both sides. Tr. 507, 510. Dr. Nolan administered an injection. Tr. 514.

In October 2008, Dr. Nolan wrote that Plaintiff had more than 95 percent pain relief from the February 2008 injection, and the relief lasted until one week prior to the appointment. Examination revealed that Plaintiff had moderate pain and radiculitis, but had a normal gait, normal coordination, intact sensation in his lower extremities, and normal muscle tone. Dr. Nolan administered another injection a few days later, noting that Plaintiff had "very good relief from the last injection." Tr. 503-507.

In January 2009 (after his date last insured), Dr. Nolan noted Plaintiff had moderate (more than 50 percent) pain relief from his last injection and the relief lasted for two months. Dr. Nolan noted that Plaintiff had moderate radiculitis, but a normal gait, intact sensation and strength of his lower extremities, normal coordination, and normal muscle tone. Tr. 500-502. Another injection, which provided significant (more than 90 percent) pain relief, was administered. Tr. 496, 502.

Examination by Dr. Nolan in April 2009 revealed that Plaintiff had moderate radiculitis pain and absent patellar reflexes, but had a normal gait, intact sensation and strength in his lower extremities, normal coordination, and normal muscle tone.  Tr. 497.  Dr. Nolan administered an injection.  Tr. 498.

In August 2009, Plaintiff reported significant (more than 80 percent) pain relief with good relief until three weeks prior to the appointment. Tr. 492. Plaintiff had an antalgic gait (limp), no response to deep tendon reflex testing in his knees, and moderate radiculitis pain with range of motion. His strength and sensation in his lower extremities was grossly intact, he had normal

coordination, and he had normal muscle tone. Dr. Nolan administered an injection. Tr. 493-494.

Examination in December 2009 indicated that Plaintiff was in some distress, had moderate low back

pain and radiculitis, was using a cane, had intact sensation and strength in both lower extremities,

had normal coordination, and had normal muscle tone. Another injection was administered.  Tr. 488-

490.

In a letter dated June 24, 2010,[5] Dr. Nolan stated that his opinion regarding Plaintiff's

symptoms and functional limitations had not changed from his March 6, 2007 opinion.  He wrote:

> I would also like to address the fact the Administrative Law Judge rejected my
> medical opinions regarding the clinical findings in my treatment records.  They were
> said to be "relatively benign" and therefore inconsistent with my opinion. The lumbar
> MRI report and images show moderate degenerative disc disease at the L3/4 and L4/5
> levels and post hemilaminectomy with scarring at the L4/5 level as seen previously.
> There is also evidence of annular fissures at the L3/4 level.  My medical records have
> consistent documentation stating the patient has no response to deep tendon reflexes,
> bilateral patellar tendon reflex, decreased muscle strength and limited Lumbar range
> of motion.

Tr. 549.  Dr. Nolan also wrote that it was his opinion:

> to a very high degree of medical certainty that sedentary level to light duty, no more
> than 4 hrs a day is the correct level of functionality for this patient.  The patient would
> need intermittent 15-20 minute breaks to change position.

Id.

## HEARING TESTIMONY

At the second hearing before the ALJ, Plaintiff testified he had experienced no major changes

in his condition since 2007. Tr. 531. He stated his activities were unchanged as well. Plaintiff

testified he still sang in the church choir several times per month which required standing and sitting,

---

[5]This letter was submitted to the ALJ on the date of the second hearing. Although the letter
was listed in the "List of Exhibits" in the administrative transcript, it was not added to the transcript
until after Plaintiff filed his brief in this action. See Tr. 2C, 529, 548-549.

but spent more time sitting due to back and leg pain. Tr. 532-533. He also stated he would have to relax the following day. Tr. 535.

Plaintiff testified he received injections from Dr. Nolan which helped for about one and a half to two months, but did not completely relieve his pain. Tr. 535. Plaintiff stated he could do "very little" with regard to activities. He could walk a couple of blocks, but then he would have to lie on the couch with his leg propped up. He said he visited his grandchildren sometimes, but spent most of his day lying around his house. Tr. 536.  Plaintiff testified that he continued to receive the injections to keep him from dragging his leg. Tr. 538.

## DISCUSSION

Plaintiff alleges that the ALJ erred in rejecting the opinions of his treating physician (Dr. Nolan) and in failing to follow the instructions of the District Court's remand order. The Commissioner contends that substantial evidence supports the decision that Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ reasonably evaluated Dr. Nolan's opinion, the ALJ complied with the District Court's remand order, and the ALJ properly determined that Plaintiff could perform jobs existing in significant numbers in the national economy.

A.    Treating Physician

Plaintiff argues that the ALJ erred in disregarding Dr. Nolan's March 2007 opinion and in failing to make any findings concerning Dr. Nolan's June 2010 opinion.  He asserts that the ALJ improperly rejected Dr. Nolan's 2007 opinion in his August 2010 decision for the same reason the ALJ previously rejected the opinion, that Dr. Nolan's clinical findings were "relatively benign." Plaintiff also argues that the ALJ cherry-picked findings in the treatment notes, while ignoring Dr.

11

Nolan's repeated observations of abnormal clinical signs and symptoms that contradicted the ALJ's conclusion.

The Commissioner contends that the ALJ reasonably evaluated Dr. Nolan's opinion and gave good reasons for discounting the March 2007 opinion. Specifically, the Commission argues that the ALJ properly discounted the opinion based on Dr. Nolan's own treatment notes and relatively benign examination findings, the December 2005 lumbar MRI which showed no recurrent disc herniation and indicated no further surgery was necessary, Dr. Marzluff's characterization of the degenerative changes in the MRI as "mild," and evidence that steroid injections provided Plaintiff with significant pain relief which lasted up to four months at a time. The Commissioner argues that Dr. Nolan's opinion that Plaintiff's pain and medication side-effects interfered with his ability to concentrate is contradicted by Dr. Nolan's repeated notations that Plaintiff was alert and fully oriented with normal affect, memory, and language abilities, and that Dr. Nolan's opinion that Plaintiff could never bend at the waist was contradicted by Plaintiff's testimony that he could do so albeit with pain. Additionally, the Commissioner contends that the ALJ complied with the District Court's prior order as he considered Dr. Nolan's abnormal examination findings, provided additional reasons for discounting Dr. Nolan's opinion that were not contained in the 2007 decision (that Dr. Nolan's 2010 treatment records continued to contain largely normal examination findings including normal sensation, coordination, muscle tone, and muscle strength), and (unlike the prior decision) did not rely on the state agency physician's (Dr. Fitz) opinion and only accorded it limited weight.

In his reply brief, Plaintiff argues that the ALJ's rejection of Dr. Nolan's opinion about Plaintiff's loss of concentration (based on Plaintiff being alert and fully oriented with normal affect,

memory, and language abilities) is incorrect because neither Dr. Nolan nor Plaintiff alleged that Plaintiff's difficulties with sustained concentration were due to emotional or psychiatric impairments, but were related to severe and chronic pain. Plaintiff argues that the ALJ's rejection of Dr. Nolan's opinion based on Plaintiff's testimony that he was able to bend at the waist is irrelevant because the inability to bend at the waist has little if any bearing on the issues of whether Plaintiff was limited to sedentary work and whether pain significantly limited Plaintiff's ability to sustain concentration.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p

provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount the opinions of Plaintiff's treating physician, Dr. Nolan, is not supported by substantial evidence. The ALJ does not appear to have considered Dr. Nolan's June 2010 opinion and gave no reasons for discounting it. This opinion provides additional support for Dr. Nolan's March 2007 opinion.

The ALJ discounted Dr. Nolan's 2007 opinion because he found that Dr. Nolan noted only "relatively benign clinical findings in his treatment notes." Tr. 399. Dr. Nolan, however, consistently noted that Plaintiff had moderate low back pain on range of motion, pain radiating into both legs and sometimes into his feet, lower back pain on palpation, absent deep tendon reflexes bilaterally, and muscle spasms. See Tr. 481, 485, 489, 493, 497, 501, 507, 510, 513, 517, 520, 524. Further, although Dr. Nolan noted improvement in Plaintiff's condition with epidural injections, he continued to prescribe narcotic pain medication to Plaintiff, noted that Plaintiff reported significant (more than moderate) pain at appointments (generally 7 out of 10), and noted that the effects of the injections lessened prior to Plaintiff's next injections.[6] See Tr. 480, 484, 488, 492, 496, 500, 503, 506, 509, 512, 519, 523.

---

[6]Additionally, it is unclear how the ALJ arrived at his determination that Plaintiff retained the RFC to perform light work. The ALJ gave little weight to Dr. Nolan's 2007 opinion that Plaintiff could only perform sedentary work for four hours a day. The ALJ also gave little weight to treating physician Dr. Marzluff's opinion that Plaintiff had been disabled since 2003. Tr. 400. The only other physician's opinion discussed by the ALJ is Dr. Fitz's (non-examining, non-treating) February 2006 opinion that Plaintiff could perform a range of medium work. This opinion was issued prior to Plaintiff's treatment by Dr. Nolan and prior to Dr. Nolan's opinions of disability. The ALJ stated he gave it limited weight because he (the ALJ) found that "claimant is limited to light work." Tr. 400.

14

Additionally, the ALJ discounted Dr. Nolan's opinion in part because Dr. Nolan found that Plaintiff could never bend from the waist, but Plaintiff testified that he could do so. It is unclear that Plaintiff's testimony contradicts Dr. Nolan's findings, as Plaintiff testified that it was "very painful" to bend from the waist. Tr. 376-377.

The ALJ discounted Dr. Nolan's 2007 opinion in part because the December 2005 lumbar spine MRI showed only postoperative changes. Review of the MRI, as interpreted by Dr. Royden Daniels, indicates that Plaintiff had moderate degenerative disc disease at L4-5. Further, Dr. Daniels noted annular fissures. Tr. 167-168. The ALJ did not discuss any of these findings. Additionally, although Dr. Marzluff noted that the December 2005 MRI showed postoperative changes and no evidence of disc herniation, Dr. Marzluff noted annular tears and opined (after reviewing the 2005 MRI) that Plaintiff had been disabled since 2003. See Tr. 166, 169.

B.    Remand for Further Proceedings/Award of Benefits

Plaintiff argues that the Court should reverse the Commissioner outright and remand for certification of benefits because it would serve no useful purpose to remand for another ALJ hearing as the medical and vocational evidence is fully developed and he has established that, pursuant to Rule 201.10 of the Medical-Vocational Guidelines and Social Security Ruling 96-9p, he has been disabled since March 4, 2006.[7] He argues that he has endured over eight years of protracted

---

[7]This Rule directs a finding of "disabled" for a claimant who is limited to performing sedentary work and has a limited education. See 20 C.F.R. Part 404, Subpt. P, App. 2, § 201.10. Although Plaintiff has a high school diploma, school records appear to indicate poor performance in high school. IQ tests administered by Dr. Waid revealed a verbal IQ of 81, a performance IQ of 75, and a full scale IQ of 76. Academic achievement testing revealed Plaintiff had abilities generally reflective of the fourth to fifth grade level. Dr. Waid concluded that Plaintiff functioned at the borderline range of intellectual functioning. Tr. 150-152. In his previous (September 2007) decision, the ALJ found that Plaintiff had the severe impairment of borderline intellectual functioning. In his
(continued...)

15

administrative and federal court litigation and it would be manifestly unjust to subject him to further administrative proceedings and potential appeals. The Commissioner contends that if the Court does not affirm the Commissioner's decision, the appropriate remedy is remand for further administrative proceedings (not payment of benefits) because the conflicting evidence does not "overwhelmingly support" Plaintiff's claims of disability and Plaintiff is requesting that the Court re-weigh the evidence and make findings of fact.

Reversal is appropriate when "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standing and when reopening the record for more evidence would serve no purpose." Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974). In such a case, an adverse decision on remand could not "withstand judicial review," and therefore reversal is appropriate without the additional step of directing that the case be remanded to the Commissioner. See Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987).

It is recommended that the Commissioner's decision be reversed and the action be remanded to the Commissioner for an award of benefits. The ALJ's decision to give little weight to the opinion of Plaintiff's treating physician, Dr. Nolan, is not supported by substantial evidence. If Dr. Nolan's opinion that Plaintiff could perform sedentary (or even light work) for less than four hours a day is given controlling weight, Plaintiff would be found disabled.  Additionally, if Dr. Nolan's opinion is

---

[7](...continued)
August 2010 decision, the ALJ (without explanation) no longer found this to be a severe impairment. In the January 2010 report and recommendation, the undersigned noted that the ALJ failed to make any determinations as to the effect of Plaintiff's borderline intellectual functioning on his ability to work and improperly found Plaintiff disabled based on the Medical-Vocational Guidelines where Plaintiff had the significant nonexertional impairment of borderline intellectual functioning. In his latest decision, the ALJ found that Plaintiff was limited to simple, routine, repetitive tasks. This may be based on Plaintiff's borderline intellectual functioning, but it is unclear from the decision.

given controlling weight, Plaintiff should be found disabled at step five based on the VE's testimony. Dr. Nolan opined that Plaintiff's pain and other discomfort, sleepiness, and side effects of prescription medication would cause a significant limitation (50 percent or more of a workday or work week) in Plaintiff's concentration or attention to work tasks. Tr. 141-143. The VE testified that such a limitation would preclude the performance of all jobs in the national economy. Tr. 542. Additionally, even if the limitation to Plaintiff's concentration or attention was only a little more than twenty percent and was only during four two-week periods a year (based on the assumption that Plaintiff received significant relief from each of his quarterly epidural injections up until approximately two weeks before the next injection), the VE found such a limitation would eliminate all jobs. Tr. 542-544.

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision to deny benefits be reversed and this action be remanded to the Commissioner for an award of benefits.[8]

Joseph R. McCrorey
United States Magistrate Judge

September 10, 2013
Columbia, South Carolina

_____

[8] Alternatively, it is recommended that this action be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and the case be remanded to the Commissioner to properly consider the opinions (the March 2007 and June 2010 opinions) of Plaintiff's treating physician (Dr. Nolan) in light of all of the evidence including all of the information contained in the December 2005 lumbar MRI and to determine Plaintiff's RFC in light of all of the evidence.

17