**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| TEDDY GOODWINE, ) | |
| ) | No. 3:12-cv-02107-DCN |
| Claimant, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security,* ) | |
| ) | |
| Respondent. ) | |
| ) | |

This matter is before the court on United States Magistrate Judge Joseph R. McCrorey's report and recommendation ("R&R") that the court reverse the Commissioner of Social Security's decision to deny claimant Teddy Goodwine's ("Goodwine") application for disability insurance benefits ("DIB"). The Commissioner has filed objections to the R&R. For the reasons set forth below, the court adopts in part the R&R, reverses the Commissioner's decision, and remands the case for further administrative proceedings.

## I.  BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A.  Procedural History

Goodwine filed an application for DIB on September 3, 2004, alleging that he had been disabled since March 8, 2004. The Social Security Administration ("the Agency") denied Goodwine's application both initially and on reconsideration. Goodwine requested a hearing before an administrative law judge ("ALJ") and ALJ Edward T. Morriss presided over a hearing held on March 14, 2007. At the hearing, Goodwine

1

amended his disability onset date to March 4, 2006, his fiftieth birthday. In a decision issued on September 20, 2007, the ALJ determined that Goodwine was not disabled. On January 19, 2010, the magistrate judge issued an R&R recommending that the ALJ's decision be reversed and remanded to the Agency for further administrative action. Neither party objected to this first R&R and, on January 28, 2010, the Hon. Joseph F. Anderson, Jr. issued an order adopting the first R&R and remanding the case to the Agency.

After the case was remanded, the ALJ held another hearing on June 25, 2010. Both Goodwine and a vocational expert ("VE") appeared and testified at this hearing. In a decision dated August 11, 2010, the ALJ determined that Goodwine was not disabled. The Appeals Council denied further review on June 5, 2012, making the ALJ's decision the final decision of the Commissioner.

Goodwine filed this action for judicial review on July 27, 2012. On March 22, 2013, he filed a brief requesting that the Commissioner's decision be reversed and the case remanded to the Agency for award of benefits. On May 6, 2013, the Commissioner filed a brief contending that her decision should be upheld, or, in the alternative, that the case should be remanded to the Agency for further administrative proceedings. On September 10, 2013, the magistrate judge issued the instant R&R, recommending that the Commissioner's decision be reversed and the case remanded for award of benefits. In case the court did not agree that remand for award of benefits was proper, the magistrate judge alternatively recommended that the case be remanded for further proceedings so that the ALJ could properly consider the March 2007 and June 2010 opinions of Goodwine's treating physician. The Commissioner objected to portions of the R&R on

September 27, 2013 and Goodwine replied to those objections on October 15, 2013. This matter has been fully briefed and is now ripe for the court's review.

### B. Goodwine's Medical History

Goodwine was fifty-four years old on December 31, 2009, the date that he was last insured for DIB. R&R 2. He has a high school education and past relevant work experience as a longshoreman. Id.

The court adopts the R&R's comprehensive description of Goodwine's medical history. Because the question at hand is whether the ALJ properly accorded little weight to the opinion of treating pain management physician J. Edward Nolan, M.D., the court here provides a summary of Dr. Nolan's medical opinions and treatment notes.

On April 12, 2006, Dr. Nolan first saw Goodwine on a pain management referral. Goodwine presented as alert, awake, and oriented, with sensation grossly intact in his extremities. Tr. 162. However, Goodwine had "decreased left lower extremity motor strength 4/5 and decreased right lower extremity motor strength 5/5 in the L4 nerve distribution and anterior thigh muscles." Id. He had "left lumbar radiculitis in the L5 nerve distribution to the calf and L3-L4 nerve distribution to the lateral thigh and left hip," and normal range of motion with mild pain in the left hip. Id. Dr. Nolan diagnosed lumbar disc displacement, lumbar post-laminectomy, and thoracic/lumbar radiculitis or neuritis. Id.

On May 2, 2006, Dr. Nolan again saw Goodwine for constant, aching pain in his low back. Tr. 161. Dr. Nolan described Goodwine's pain as mild in the left lumbar paraspinous musculature and mild in the left sacroiliac joint. Id. Dr. Nolan also noted

that Goodwine had "left lumbar radiculitis in the S1 nerve distribution to the foot." Id. Goodwine received lysis of adhesions to help alleviate his pain. Id.

On May 16, 2006, Dr. Nolan noted that Goodwine "has intermittent dull pain in the low back." Tr. 160. The lysis of adhesions that Goodwine received alleviated his back pain for several days, but "his pain has returned intermittently." Id. Dr. Nolan noted that Goodwine had normal coordination and gait, but that he also had decreased lower extremity motor strength, no lower extremity patella reflexes, moderate pain in the left lumbar paraspinous musculature, moderate to severe pain in the left sacroiliac joint, and severe left lumbar radiculitis in the L5 nerve distribution. Id. Dr. Nolan administered a lumbar facet joint injection and a sacroiliac joint injection. Id.

On June 2, 2006, Goodwine complained of constant dull low back pain that rated a five out of ten, with ten being the most severe. Tr. 159. While he was alert, awake, and oriented, with normal coordination, gait, and muscle tone, he also had decreased motor strength, mild to moderate lumbar and leg pain, and no lower extremity reflexes. Id. Dr. Nolan administered a steroid injection.

On February 2, 2007, Dr. Nolan treated Goodwine's lower back and leg pain by administering a steroid injection. Tr. 146, 524. Treatment notes indicate that Goodwine has received "almost complete relief with last injection and the pain only started to return in the last few months." Id. While Goodwine presented as alert, awake, and oriented, Dr. Nolan noted that he had moderate lumbar pain, moderate pain in his left sacroiliac joint, and moderate radiating nerve pain from his lumbar spine through his left leg. Tr. 147. The diagnosis was lumbar/thoracic radiculitis and sacral joint pain. Id.

On June 5, 2007, Goodwine again received another steroid injection from Dr. Nolan. Tr. 519. Goodwine stated that the February 2007 injection had provided about three months of pain relief, with pain slowly returning since then. Id. On examination, Goodwine was alert, awake, and oriented with grossly intact sensation and muscle strength in his legs. Tr. 520. However, he had no response to deep tendon reflex tests in both knees and had pain in his left leg when his range of motion was tested. Id. Dr. Nolan described Goodwine's pain as moderate in the lumbar area and in the sacroiliac joint, with moderate lumbar radiculitis pain. Id.

On October 5, 2007, Goodwine again visited Dr. Nolan to receive a steroid injection. Tr. 516. While Goodwine's leg pain was still relieved by the previous injection, his low back pain had returned. Id. Dr. Nolan noted that Goodwine was alert, awake, and oriented with normal sensation in his legs and close to normal muscle strength. Tr. 517. Goodwine's lumbar pain was moderate. Id.

On February 5, 2008, Dr. Nolan again treated Goodwine with a steroid injection. Tr. 512. Goodwine complained of lower back and leg pain that registered as a seven out of ten in severity. Id. Goodwine's pain relief from the previous injection had been moderate, and his pain had intensified significantly three months after the previous injection. Id. Goodwine was alert, awake and oriented with sensation in his legs and close to normal muscle strength. Tr. 513. His pain was moderate in the lumbar region and improved in his sacroiliac joint, with moderate lumbar radiculitis pain. Id.

On October 6, 2008, Goodwine saw Dr. Nolan for electrical stimulation therapy and lysis of adhesions for his lower back. Tr. 506. The previous steroid injection had relieved Goodwine's pain for several months, but the pain had intensified significantly

one week before this appointment. Id. Goodwine was alert, awake and oriented with grossly intact sensory function in both legs and normal motor function. Tr. 507. His lumbar pain and lumbar radiculitis pain were both moderate. Id.

On October 9, 2008, Dr. Nolan administered a steroid injection to Goodwine. Tr. 503. Because Dr. Nolan had examined Goodwine three days before, he did not make any additional findings. Tr. 504.

On January 9, 2009, Dr. Nolan again administered a steroid injection. Tr. 502. Goodwine had moderate pain relief from the previous injection for about two months, with the pain slowly returning since then in the area treated. Tr. 500. Goodwine was alert, awake and oriented with grossly intact sensory function and muscle strength in both legs. Tr. 501. He had significant radicular leg pain and muscle spasms. Id.

On April 14, 2009, Dr. Nolan again administered a steroid injection to Goodwine. Tr. 496. Goodwine's low back and leg pain was constant and a seven out of ten in intensity. Id. His previous steroid injection had provided significant relief until "recently the pain intensified significantly." Id. Goodwine was alert, awake and oriented with grossly intact sensation and strength in his lower legs. Tr. 497. He had moderate lumbar radiculitis pain and intermittent bilateral foot pain. Id.

On August 14, 2009, Dr. Nolan again treated Goodwine with a steroid injection. Tr. 492. The previous injection had provided "good relief until three weeks ago," when "the pain intensified significantly." Id. He was alert, awake and oriented, with grossly intact sensation and muscle strength in his legs; however, he had no response to deep tendon knee reflex tests and his gait was antalgic. Tr. 493. He had moderate lumbar radiculitis pain and intermittent bilateral foot pain. Id.

On December 1, 2009, Dr. Nolan administered a steroid injection to Goodwine. Tr. 488. The previous injection had provided significant relief but the pain "is slowly returning in the area treated, the pain intensified significantly in the lower back." Tr. 488. Goodwine was alert, awake and oriented, but using a cane or crutch. Tr. 489. He had moderate lumbar pain as well as lumbar radiculitis pain and bilateral intermittent foot pain. Id.

On March 2, 2010, Dr. Nolan again treated Goodwine with a steroid injection. Tr. 484. Goodwine had significant relief from the previous injection, but the "pain is slowly returning to the area treated, the pain intensified in the lower left extremity." Id. Goodwine was alert, awake and oriented but his gait was antalgic. Tr. 485. He had moderate lumbar pain and moderate lumbar radiculitis pain. Id.

On June 2, 2010, Dr. Nolan again administered a steroid injection to Goodwine. Tr. 480. The previous injection had provided significant relief "until two weeks ago, the pain intensified significantly." Id. Goodwine was alert, awake and oriented with grossly intact sensation and muscle strength in his lower limbs but his gait was antalgic. Tr. 481. He had moderate lumbar pain (including tenderness to palpation) with moderate lumbar radiculitis pain. Id.

On March 6, 2007, Dr. Nolan completed a Treating Physician's Statement for Goodwine. In this statement, Dr. Nolan opined that Goodwine had a sedentary maximum exertion ability, that is, that he could sit for six hours out of an eight-hour work day, stand and/or walk for two hours out of an eight-hour work day, occasionally lift and carry up to ten pounds and frequently lift or carry small articles less than ten pounds. Tr. 141. Dr. Nolan also opined that Goodwine should never bend at the waist and that his ability to

7

concentrate and attend to work tasks was significantly limited by his pain, sleepiness, and side effects of his prescription medication. Tr. 142-43. Dr. Nolan also stated that Goodwine's impairments were expected to be permanent, with no significant improvement expected. Tr. 143.

On June 24, 2010, Dr. Nolan supplemented his previous opinion by stating that his "opinion has not changed and there has been no difference in the patient's symptoms or functional limitations." Tr. 549. Dr. Nolan disputed the ALJ's previous characterizations of his findings as relatively benign, noting that

> the lumbar MRI report and images show moderate degenerative disc disease at the L3/4 and L4/5 levels and post hemilaminectomy with scarring at the L4/5 level as seen previously. There is also evidence of annular fissures at the L3/4 level. My medical records have consistent documentation stating the patient has no response to deep tendon reflexes, bilateral patellar tendon reflex, decreased muscle strength and limited Lumbar range of motion.

Id. Dr. Nolan summarized his opinion by stating that

> Teddy Goodwine is unable to complete all job tasks required of a Longshoreman. He is unable to perform the heavy work demands required by his former job position therefore it is my opinion to a very high degree of medical certainty that sedentary level to light duty, no more than 4 hours a day is the correct level of functionality for this patient. The patient would need intermittent 15-20 minute breaks to change position.

Id.

### C. ALJ's Findings

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-

step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520, 416.920.  Under this process, the ALJ must determine whether the claimant:  (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined by his RFC) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.  See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).  The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

To determine whether Goodwine was disabled from February 15, 2009, through the date of his second decision, the ALJ employed the statutorily-required five-step sequential evaluation process.  At step one, the ALJ found that Goodwine did not engage in substantial gainful activity during the period at issue.  Tr. 395.  At step two, the ALJ found that Goodwine suffered from a single severe impairment: status post lumbar laminectomy.  Id.  At step three, the ALJ found that Goodwine's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments.  Tr. 396.  Before reaching the fourth step, the ALJ determined that Goodwine retained the residual functional capacity ("RFC") to perform light work limited to simple, routine, repetitive tasks.  Id.  Additionally, the ALJ found

9

that Goodwine would require work breaks which could be accommodated on a scheduled basis totaling one hour for each eight hour day. Id. At step four, the ALJ found that Goodwine was unable to perform any of his past relevant work. Tr. 401. Finally, at the fifth step, the ALJ found that Goodwine could perform jobs existing in significant numbers in the national economy and concluded that he was not disabled during the period at issue. Tr. 401-02.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). This court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.

## III.  DISCUSSION

In the R&R, the magistrate judge determined that the Commissioner's decision should be reversed because the ALJ improperly weighed the opinion of Dr. J. Edward Nolan, Goodwine's treating physician.  The Commissioner objects to the R&R, and argues that substantial evidence supports the ALJ's decision to accord little weight to Dr. Nolan's opinion.

### A.  The ALJ Erred in his consideration of Dr. Nolan's Opinion

Social Security regulations require the ALJ to consider all of the medical opinions in a claimant's case record, as well as the rest of the relevant evidence.  20 C.F.R. § 404.1527(c) (2012).  Medical opinions are evaluated pursuant to the following non-exclusive list:

> (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005).  In general, more weight is given to the opinion of a "source who has examined [a claimant] than to the opinion of a source who has not," 20 C.F.R. § 404.1527(c)(1), but "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  The ALJ must also give specific reasons for the weight given to a treating physician's medical opinion.  See SSR 96-2p, 1996 WL 374188 (July 2, 1996).

The ALJ is also obligated to explain his findings and conclusions on all material issues of fact, law, or discretion presented.  5 U.S.C. § 557(c)(3)(A) (2012).  "Strict adherence to this statutorily-imposed obligation is critical to the appellate review

process," and courts have remanded cases where the reasoning for the ALJ's conclusion "is lacking and therefore presents inadequate information to accommodate a thorough review." See v. Wash. Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir.1994) (internal citation omitted). While an ALJ need not set forth his findings in a particular format, see Stephens v. Heckler, 766 F.2d 284, 287–88 (7th Cir.1985), a reviewing court cannot determine if findings are supported by substantial evidence unless the ALJ explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235–36 (4th Cir.1984). "Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record." Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir.1977).

Regarding Dr. Nolan's opinion, the ALJ's August 11, 2010 opinion stated, in its entirety:

> I give little weight to Dr. Nolan's assessment that the claimant is limited to sedentary work based on his relatively benign clinical findings in his treatment notes. Although the claimant has some limitations post surgery, there has been no recurrent herniation and he is not a surgical candidate. His MRI in December 2005 showed only postoperative changes. The claimant's pain is in the mild to moderate range as noted in Dr. Nolan's treatment records. Also, according to Dr. Nolan's more recent records, the claimant reported being pain-free for up to four months at a time in between injections. In addition, the claimant testified that although it was painful, he could bend at the waist and pick up items from the floor. As far as the claimant's pain, sleepiness, and medicine side-effects interfering with his ability to concentrate, the treatment notes of Dr. Nolan reflect that the claimant consistently was in no acute distress with a normal affect and that claimant was alert, awake, and oriented times three, with intact short and long term memory, normal language skills, and a normal fund of knowledge. Dr. Nolan's findings of antalgic gait were not made until March 2010 and June 2010 and they are somewhat suspect as he did not indicate any worsening in the claimant's condition. On March 2, 2010, he

>noted that the claimant had normal coordination and normal tone. Dr. Nolan indicated the claimant had moderate pain; however, he noted the claimant's gait was antalgic. On June 2, 2010, his findings were much the same. The claimant's sensation and coordination were normal. Muscle strength was grossly intact bilaterally in the lower extremities. Dr. Nolan indicated that the lumbar pain was moderate, but he noted an antalgic gait (Exhibit 2F). While there are reports of some decreased strength, his June 2, 2010, the [sic] examination showed that his strength was intact. For these reasons, I do not give his opinion controlling weight.

Tr. 399-400.

As an initial matter, Dr. Nolan first noted that Goodwine had an antalgic gait on August 14, 2009. The ALJ erred to the extent that he discounted Dr. Nolan's opinion on the basis that Goodwine's antalgic gait did not surface until 2010. Second, as the magistrate judge explained, Goodwine's testimony that it was very painful for him to bend at the waist does not necessarily undercut Dr. Nolan's March 2007 opinion that Goodwine cannot bend at the waist. The ALJ erred to the extent that he discounted Dr. Nolan's opinion on this basis. Finally, the ALJ's decision fails to mention Dr. Nolan's June 24, 2010 opinion at all. In this June 2010 opinion, Dr. Nolan explained that Goodwine's MRI report showed moderate degenerative disc disease (not just postoperative changes); that the medical records contain evidence of annular fissures in Goodwine's lumbar spine; and that Dr. Nolan's medical records consistently documented Goodwine's significant pain, lack of deep tendon reflexes, and other symptoms. These aspects of Dr. Nolan's opinion directly contradict the ALJ's analysis. Because this case was previously remanded specifically for further consideration of Dr. Nolan's medical opinion and treatment notes, the ALJ's failure to consider the doctor's June 2010 opinion is error. The ALJ's failure to discuss Dr. Nolan's June 2010 opinion amounts to an abdication of the duty of explanation. The Commissioner's decision must be reversed.

### B. Award of Benefits

What remains to be considered is whether the Commissioner's decision should be remanded for further proceedings or for an award of benefits. Under the fourth sentence of 42 U.S.C. § 405(g), courts "have power to enter . . . judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Fourth Circuit has explained that outright reversal – without remand for further consideration – is appropriate under sentence four "where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974). Reversal with instructions that the Agency award benefits is appropriate where a claimant has presented clear and convincing evidence that he is entitled to benefits. Veeney ex rel. Strother v. Sullivan, 973 F.3d 326, 333 (4th Cir.1992) (citing Sahara Coal Co. v. United States Dep't of Labor, 946 F.2d 554, 558 (7th Cir.1991) ("If the outcome of a remand is foreordained, we need not order one.")).

While the ALJ certainly failed to properly consider Dr. Nolan's opinion, Goodwine has not presented clear and convincing evidence that he is entitled to benefits. As a result, remand for further consideration is appropriate. On remand, the ALJ should consider all of the relevant evidence, including all of Dr. Nolan's treatment notes and written opinions as well as the medical records related to Goodwine's December 2005 MRI.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS IN PART** the magistrate judge's report & recommendation, ECF No. 31, **REVERSES** the Commissioner's decision, and **REMANDS** the case for further administrative proceedings.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 21, 2014**
**Charleston, South Carolina**